## Jones v. Taylor et al.

Oct. 8, 1943.

Zeb A. Stewart and G. L. Dickinson for appellant.

J. J. Tye and R. L. Smith for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

N. A. Jones and Martha Jones were husband and wife and the parents of eight children, some of whom

had died leaving children. Martha Jones died intestate, a resident of Knox County, in 1938. She owned at that time three small parcels of real estate all of which aggregated not exceeding ten acres and she perhaps left enough personalty to discharge her debts and cost of administration. N. A. Jones died intestate the following year (1939), a resident of the same county. A married daughter of the couple, Allie E. Taylor, was appointed and qualified as administratrix of each of her parents' estates. The father, N. A. Jones, did not leave sufficient personalty to discharge his debts and the cost of administering his estate; however, he owned at his death two tracts of land, but the record does not disclose whether or not they adjoined. One of them contained about 120 acres and the other one something near 50 acres.

This action was started by the administratrix, in her fiducial capacity and individually, with some of the other heirs joining her, filing a petition in the Knox Circuit Court to settle the estate of the mother and to sell, for division among the heirs, the three small parcels of real estate the mother owned at her death. Later her petition was amended in which she, and her associate plaintiffs, sought the same relief as to the estate of the deceased father. Whether or not that amendment was a departure from the original petition, and should have been an independent action, was not raised in any manner in the trial court. On the contrary the combined actions proceeded without objection to a final determination.

The answer of the defendants made an issue as to the divisibility of the real estate owned by each of the ancestors, and which appears to have been the only issue made and tried, except one made by appellant and defendant, J. L. Jones, in a cross-petition filed against his brother, who was plaintiff and appellee here. The issue so made in his cross-petition was, that after the deaths of the parents Flem Jones purchased from his brother, J. L. Jones, a truck for the price of $1,000 which was evidenced by a note of that amount then and there executed and delivered. It was averred in appellant's cross-petition that (later) Flem Jones executed a writing to him in satisfaction of the note given for the truck whereby Flem sold to appellant all of his interest in the estates of his parents but which was not recorded and was later lost. He therefore prayed that the interest of his brother, Flem, in the estates of their parents be finally adjudged to him.

Flem Jones denied in his answer to the cross-petition against him any such transaction, but in giving his testimony he admitted the execution of a writing to his brother, J. L. Jones, but said that it was only a mortgage of his interest in the two estates. He was asked:

"Q. You did trade him your interest in this estate for the truck? A. A thousand dollars worth of it.

"Q. And you agreed if it brought more than a thousand dollars, he was to pay you that back. Is that right? A. Yes, sir. Way me and him traded, he had that truck, supposed to give the truck nothing owed on it. It would be free."

The lost writing was prepared in the presence of the two Jones brothers by A. L. Coldiron to whom they applied for that purpose and he testified that: "They just come in my place, asked me about drawing a contract— said they were trading. When they told me what it was—J. L. was swapping a truck to some land, I told them they better get a lawyer to fix it up and J. L. told me, the way I recollect it, that Flem wasn't divorced and they had rather draw a contract and he could make a deed later.

"Q. Did you draw that contract? A. Yes, sir, I think I did.

"Q. Do you remember, recall now, what it was about? A. Well, the way I recall it, J. L. was swapping Flem a truck to his interest in some land.

"Q. Do you remember whether anything was said about what land it was—whether it was his interest, Flem Jones' interest, in his father's and mother's estate? A. Way, I recollect, J. L. was buying Flem's part in his home place, his father's and mother's home place."

It was proven by other testimony that Flem Jones had made statements to the witnesses that he had sold his interest in his parents' estates to his brother, the appellant. The latter testified positively that the absolute sale was made and the writing executed; but it is positively shown that, whether it was a pledge or mortgage or an outright sale it was not signed by Gladys Jones, the wife of Flem Jones, who was separated from her husband, but no divorce had been granted. In addition to denying the transaction set up in the cross-petition of J. L. Jones, his brother, Flem, alleged a number of

claimed items of indebtedness which he alleged his broth-
er owed him aggregating an amount sufficient to practi-
cally extinguish the price of the truck he had purchased
from his brother, the appellant. Such claims were ap-
propriately denied in proper pleading, thus making the
issues on the cross-petition.

In the meantime Gladys Jones, the wife of Flem,
intervened and filed her answer and cross-petition to the
cross-petition of J. L. Jones in which she set up her in-
choate right of dower to the real estate inherited by her
husband from his parents, and she prayed that she be ad-
judged the value of such interest in the real estate
"either in kind or in the proceeds of said estates." The
facts stated in her pleading are not only undenied but
admitted. After the issues were so formed the parties
began the taking of proof by depositions which was ex-
tended to 237 pages, by far the greater part of which was
directed to the issue as to the divisibility of the involved
real estate into eight parcels, some of which would neces-
sarily be alloted to infant children, while the remainder
of the proof was directed to the issue formed between
J. L. and Flem Jones. On final submission the court ad-
judged that the land could not be divided in kind among
the eight sets of heirs without greatly impairing the
value of each interest and directed the land to be sold by
the Master Commissioner which he did, and the total pro-
ceeds amounted to less than $2,000. But little argument
is made in briefs against the court's judgment on that
phase of the case. But were it otherwise, then the value,
the number of parcels that would have to be made in the
division, the size and nature of the parcels to be made,
together with the scattered location of the land to be di-
vided, make it perfectly plain that the court properly de-
termined that issue.

The court also adjudged on the issues between J. L.
and Flem Jones that "the license for the truck was never
transferred by J. L. Jones to Flem Jones and therefore
title never passed." It further adjudged that there was
no written memorandum in the record and that "it is ap-
parent to the court their minds never got together and
the court is leaving them just as they were before any
talk was had between them and this disposes of the claim
of the wife of Flem D. Jones. It is therefore, adjudged
that the claim of J. L. Jones as against Flem Jones for
his interest in the estates of Martha Jones and N. A.

Jones, deceased, be and the same is hereby dismissed and Flem Jones will recover his costs incurred herein on said claim against J. L. Jones,'' and the complaint of that judgment on this appeal by J. L. Jones is the only question presented for our determination.

From the recitation of the substance of the testimony on that issue, as previously made herein, together with other circumstances not recited, it undoubtedly appears that a writing duly signed by Flem Jones was executed to appellant, the only dispute being whether it was, in effect, a mortgage or an outright conveyance. It will be observed that the court did not adjudge that Flem Jones was not indebted, in the amount claimed, to his brother, the appellant, which indicates at least that the court was of the opinion that the offset items of indebtedness pleaded by Flem Jones had not been established. However, in weighing the testimony with reference to such offset items we are convinced that if any of them should be sustained they would fall far short of the $1,000 indebtedness of Flem Jones to the appellant, leaving a balance greatly in excess of the one-eighth interest of Flem Jones in the estates of his parents, and insufficient to satisfy the debt of appellant. So that for the purposes of this case it makes no material difference whether the executed lost writing between the two brothers was an outright conveyance, or only a mortgage, since in either event the balance of the indebtedness would exceed the property sold or mortgaged. Since the testimony concerning the items composing the alleged indebtedness of appellant to his brother, Flem, could be of no interest to any one, except the immediate parties, and, since it is both confused and contradictory, we have concluded that no purpose of value could be served by undertaking an analysis of it and which we have concluded not to undertake.

The testimony showed that appellant is both sober and industrious, whilst appellee is the opposite in both respects. He purchased the truck from his brother in order to receive employment from the latter in hauling lumber which was manufactured at a saw milling plant owned by appellant and the employment, according to the proof, was largely due to the fact that the mother of the two had requested it of appellant, plus his desire to aid and assist his brother in earning a living for him and his wife. The proof showed that appellant had paid a num-

ber of fines assessed against his brother, Flem, for infractions of the law, and which in turn were produced by intoxication, and that as the driver of a motor vehicle he was careless and had wrecked the truck that had been sold to him by appellant. It also appears that he (Flem) had no property and the balance of appellant's debt, after applying his brother's portion of their parents' estates to its payment, would still leave unpaid a considerable unpaid portion of it with nothing out of which it might be realized. Appellant does not insist for judgment against his brother for such excess, his contention being exclusively toward establishing his right to appropriate on his debt the amount of his brother's interest in their parents' estates growing out of the writing heretofore referred to. The reasons given by the court for not so adjudging is far from persuasive, since the facts we have related indisputably confirm appellant's contention that he is entitled to the relief sought by his cross-petition which the court denied and which he urges on this appeal was error.

However, it is equally clear that, since Flem Jones became seized by inheritance of his interest in the real estate of his parents during the marriage relation between him and his wife, Gladys Jones, she is entitled to the value of her inchoate right of dower in and to her husband's share of the proceeds of those estates. Her age does not appear in the record but the value of her interest is easily ascertainable from Mortality Table II on page 2682 of Baldwin's 1936 Edition of Carroll's Kentucky Statutes. The value of that interest should be calculated by the court and its amount deducted from the value of her husband's interest in the proceeds of his parents' estates, and the balance of his interest should then be adjudged to J. L. Jones.

Wherefore, for the reasons stated, the judgment is reversed with directions to set it aside and to enter one in accordance with the directions in this opinion.